**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TYESHA M. GONZALEZ, ) | |
| ) | CASE NO. 1:14-cv-00601 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Tyesha Gonzalez ("Gonzalez") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Gonzalez's claim for Supplemental Security Income ("SSI") under Title(s) XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

### I.  Procedural History

On March 30, 2009, Gonzalez filed an application for SSI alleging a disability onset date of February 20, 2006.  Her application was denied both initially and upon reconsideration.

Gonzalez timely requested an administrative hearing.  (Tr. 18.)

On December 14, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Gonzalez, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 18.)  On January 17, 2013, the ALJ found Gonzalez was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 24A-24B.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age thirty-five (35) at the time of her administrative hearing, Gonzalez is a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963(c).  (Tr. 24A.)  Gonzalez has a limited education and no past relevant work.  *Id*.

## III.  Standard for Disability

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Gonzalez established medically determinable, severe impairments, due to affective disorder and limited vision of the left eye; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 20-21.)  Gonzalez was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels with a number of non-exertional limitations.  (Tr. 22.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Gonzalez was not disabled.  (Tr. 24A-24B.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

3

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.

Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physician Rule*

Gonzalez argues that the ALJ violated the treating physician rule by failing to provide reasonably adequate explanations for rejecting the opinions of a treating psychiatrist – Achala Patel, M.D. (ECF No.16 at 18-21.) The Commissioner asserts that the ALJ adequately explained her reasons for discounting Dr. Patel's opinions. (ECF No. 18 at 9-10.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating

5

source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[1]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at *5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data,

---

[1] Pursuant to 20 C.F.R. § 416.927(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

6

and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406.  The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

    Gonzalez asserts that the ALJ failed to give appropriate weight to the opinions of Dr. Patel, her treating psychiatrist, specifically opinions she rendered in 2011 and 2012.  (ECF No. 16 at 19.)  The record contains four statements from Dr. Patel relating to Gonzalez's mental ability to sustain basic work functions.

    The first Mental Functional Capacity Assessment is dated April 3, 2007, wherein Dr. Patel opined that Gonzalez was markedly limited in her ability to interact appropriately with the general public and moderately limited in her ability to maintain attention and concentration for extended periods.  (Tr. 449.)  Dr. Patel found no other significant limitations in the other

eighteen categories and opined that Gonzalez was employable. *Id*.

Over four years later, on May 9, 2011, Dr. Patel completed a second assessment wherein she found that Gonzalez was markedly limited in eight of twenty categories, moderately limited in ten others, and not significantly limited in the remaining two. (Tr. 453.)

On September 29, 2011, Dr. Patel stated that Gonzalez's ability to sustain concentration, persist at tasks, and complete tasks in a timely fashion was poor to fair. (Tr. 299.) She further explained that Gonzalez had low frustration tolerance, difficulty adapting to changes, and difficulty interacting with others. *Id*.

On February 24, 2012, Karin Biggs, a licensed social worker, and Dr. Patel, as the supervising doctor, completed a medical source statement concerning the nature and severity of Gonzalez's mental impairments. (Tr. 457-58.) Therein, it was indicated that Gonzalez was markedly limited in her ability to interact appropriately with others (*e.g.*, public, supervisors, co-workers) and in her ability to withstand the stresses and pressures of routine simple unskilled work, as well as moderately limited in her ability to maintain attention and concentration for two-hour periods of time. (Tr. 457-58.)

The ALJ addressed Dr. Patel's opinions as follows:

> In May 2011, Dr. Patel listed marked limitations in the ability to maintain attention and concentration for extended periods; in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, in the ability to work in coordination with or proximity to others without being distracted by them; in the ability to interact appropriately with general public; in the ability to ask simple questions or request assistance; in the ability to accept instructions and respond appropriately to criticism from supervisors; in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and in the ability to respond appropriately to changes in the work setting (Exhibit B26F). This is in contrast to a similar report filled out by Dr. Patel in 2007 at Exhibit 25F in which Dr. Patel only listed one marked limitation, in the ability to interact appropriately with the

8

> general public (Exhibit B25F).² In September 2011, Dr. Patel stated that Ms. Gonzalez's concentration was good to fair (Exhibit B9F).
>
> Karin Biggs, LSW, reported in February 2012 that Ms. Gonzalez had dysthymic disorder (Exhibit B27F). She stated that Ms. Gonzalez had marked limitation in the ability to interact appropriately with others and marked limitations in the ability to withstand the stresses and pressures of routine simple unskilled work (Exhibit B27F). Despite these marked limitations, Karin Biggs, LSW, reported that she had not witnessed Ms. Gonzalez in an employment setting and offered no additional information in support of the marked limitations.
>
> I accept the report filled out by Dr. Patel in 2007 at Exhibit 25F in which Dr. Patel only listed one marked limitation, in the ability to interact appropriately with the general public to be supported by the evidence (Exhibit B25F). The record does not support the numerous marked limitations Dr. Patel later suggests in 2011 at Exhibit B26F, although, I accept the same marked limitation recorded at both exhibits with respect to dealing with others to the extent that Ms. Gonzalez is limited to low stress unskilled simple tasks. In September 2011, Dr. Patel stated that Ms. Gonzalez had difficulty interacting with others due to anxiety and low frustration tolerance (Exhibit B9F).
>
> With respect to the assessment of Karin Biggs, LSW, in February 2012, I accept that Ms. Gonzalez is not motivated in recovery and that this undermines her credibility (Exhibit B27F).

(Tr. 23-24.)

    The Commissioner does not challenge Gonzalez's assertion that Dr. Patel qualifies as a treating physician. (ECF No. 18.) The ALJ, therefore, was required to provide good reasons for rejecting the limitations she assessed. Without any meaningful analysis or discussion, the ALJ offered three reasons for effectively rejecting Dr. Patel's May 2011 opinion: (1) it was "in

---

² The Court notes that it is unclear from the decision which time period the ALJ is considering. Gonzalez alleged a disability onset date of February 26, 2006. (Tr. 18.) Gonzalez concedes that she had a prior application for SSI denied on September 12, 2007. (ECF No. 16 at 2.) Gonzalez further avers that the ALJ was permitted to reopen the 2007 application for "good cause." *Id*. There is no indication that the ALJ reopened the prior determination for good cause. At the same time, there is also no indication that the ALJ found the previous decision to be *res judicata*, and she did discuss Dr. Patel's 2007 opinion predating the earlier SSI denial.

contrast" to a similar report completed by Dr. Patel in 2007; (2) in September 2011, Dr. Patel stated that Gonzalez's concentration was good to fair (Exh. B9F); and, (3) a blanket statement that the record does not support the numerous marked limitations contained in Dr. Patel's May 2011 opinion. (Tr. 23-24.)

The ALJ's primary reason for rejecting the opinions contained in the May 2011 questionnaire completed by Dr. Patel is the inconsistency with an assessment she completed over four years earlier in 2007. The Court finds this conclusion perplexing. It appears to be based on the assumption that an individual's psychological impairments are static in nature, incapable of improving or deteriorating. The Court finds this a dubious assumption, but this Court, like the ALJ, has no medical expertise. ALJs are not medical experts and it is well-established that an ALJ may not substitute personal opinions for those of medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2$^{d}$ Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 U.S. Dist. LEXIS 131119, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his

own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). The ALJ's conclusion that Dr. Patel's May 2011 was untenable because Dr. Patel proffered a different opinion four years earlier, without any explanation, is unreasonable. If Gonzalez's diagnoses, course of treatment, and examination results remained identical over the same four years, the ALJ's decision to discredit the later opinion might be reasonable. However, the decision contains no such comparison or discussion. Rather, the ALJ offered no meaningful explanation as to why she chose to credit Dr. Patel's 2007 opinion while discrediting her May 2011 opinion, aside from the fact that the limitations contained in the latter were more restrictive. Absent any explanation or discussion, the Court cannot follow the ALJ's reasoning. As such, the ALJ failed to give good reasons for discounting Dr. Patel's May 2011 opinion.

As noted by the ALJ, on September 29, 2011, Dr. Patel stated that Gonzalez's concentration was good to fair. On its surface, this statement appears to be somewhat inconsistent with Dr. Patel's May 2011 opinion. However, the May 2011 questionnaire is considerably more detailed. In the broad category of "Sustained Concentration and Persistence," Dr. Patel noted that Gonzalez was moderately limited in her ability to carry out both detailed instructions, as well as short and simple instructions. (Tr. 453.) Dr. Patel also found only moderate limitations in Gonzalez's ability to make simple work related decisions and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id*. However, Dr. Patel also opined that Gonzalez was markedly limited in her ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and,

11

(3) work in coordination with or proximity to others without being distracted by them. *Id*. These conclusions are consistent with other portions of the September 29, 2011 opinion cited by the ALJ, which states that Gonzalez's "persistence would be expected to be poor to fair." (Tr. 299.) To the extent the ALJ discredited the more specific opinions in Dr. Patel's May 2011 opinion due to a superficial inconsistency with a more generalized statement made a few months later, the Court finds that "good reason" is lacking under the requirements of the treating physician rule.

The ALJ's final reason for rejecting Dr. Patel's opinion – that it is not supported by the record – is conclusory and devoid of explanation, thereby depriving this Court of the ability to conduct a meaningful review. The ALJ failed to reference specific facts in the record that were ostensibly inconsistent with Dr. Patel's 2011 opinion. Accordingly, this Court cannot accept the ALJ's blanket assertion that Dr. Patel's opinion was not well supported by the record as a whole as a good reason for rejection. Accepting such a general, boilerplate statement, without any explanation, would effectively eviscerate the treating physician rule.

Finally, the Commissioner suggests that Dr. Patel's 2011 opinion was based on Gonzalez's subjective and self-reported complaints. (ECF No. 18 at 9.) The Commissioner further points out that "[i]n the portion of the mental functional capacity assessment form that asked Dr. Patel to describe Plaintiff's medical conditions, Dr. Patel wrote only 'irritability, low frustration tolerance, sleeping 15-16 hrs a day.'" (ECF No. 18 at 9, citing Tr. 455.) However, the ALJ did not offer these explanations in his decision. Accordingly, these arguments constitute *post hoc* rationale that this Court cannot rely on to supplement the reasoning set forth in the ALJ's decision. *See, e.g., Bable v. Astrue,* 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio Oct. 31,

2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001)); *Sarchet v. Chater,* 78 F.3d 305 (7th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

The Court finds that the ALJ erred by failing to give good reasons for rejecting the limitations assessed by Dr. Patel. As such, in the interests of judicial economy, the Court declines to address Gonzalez's remaining assignments of error. Nonetheless, as the Commissioner has not argued that the medical records, which Gonzalez references in her first assignment of error, were improperly submitted, the ALJ should consider those records as well.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: February 17, 2015